1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL A. H.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  3:20-cv-00911-BAS-LL<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 18, 19]** |

Plaintiff Manuel A. H.  brought this action for judicial review of the Social Security Commissioner's denial of his claim for disability insurance benefits. Before this Court are Plaintiff's Motion for Summary Judgment [ECF No. 18 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 19 ("Def.'s Mot.")], and Plaintiff's Reply in Support of Motion for Summary Judgment [ECF No. 20 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be

**GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED**. This Court further **RECOMMENDS** that the case be **REMANDED** for further proceedings.

## I.   PROCEDURAL BACKGROUND

On March 22, 2017[1], Plaintiff applied for Title II disability insurance benefits ("DIB") pursuant to Title II and Supplemental Security Income ("SSI") pursuant to Title XVI. See Administrative Record ("AR") at ECF No. 16 at 225-31, 232-39. In Plaintiff's application for DIB, he alleged disability beginning on June 9, 2016. AR 225.[2] In Plaintiff's application for SSI, he alleged disability beginning on November 18, 2014. AR 232. Plaintiff's claims for both DIB and SSI were initially denied on September 8, 2017. Id. at 148-52. Plaintiff requested reconsideration of the initial determination on November 3, 2017, which was also denied. Id. at 153-163. On April 12, 2018, Plaintiff requested a hearing before an Administrative Law Judge. Id. at 164.

On May 30, 2019, a hearing was held before Administrative Law Judge ("ALJ") Deborah Van Vleck. Id. at 189-217. Plaintiff appeared with his attorney, Mr. Leonard Schneider, and testified at the hearing. Id. at 43-89. An impartial vocational expert, Ms. Jennifer Guediri, was also present and testified. Id. In a written decision dated June 18, 2019, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 8, 2014 through the date of the ALJ's decision.[3] Id.

---

[1] The Administrative Law Judge's June 18, 2019 decision states that Plaintiff's application was filed on February 13, 2017. AR 27. Plaintiff and Defendant also use the application date of February 13, 2017 in their respective Cross-Motions for Summary Judgment. Pl.'s Mot. at 1; Def.'s Mot. at 2. However, based on the Court's review of the Administrative Record, Plaintiff's application was filed on March 22, 2017. AR 225-31, 232-39.

[2] The ALJ's opinion and Plaintiff's Motion for Summary Judgment incorrectly state that Plaintiff's DIB application alleged a disability onset date of November 18, 2014. ECF No. 18 at 1. However, based on the Court's review of the Administrative Record, November 18, 2014 was the alleged onset date for Plaintiff's SSI application; Plaintiff's DIB application alleged a disability onset date of June 9, 2016. AR 232, 225.

[3] The ALJ noted in her decision that Plaintiff's employment records indicated that he engaged in substantial gainful employment after the November SSI date from June 2015 through June 2016. Id. at 30.

1    at 38.  The ALJ's decision became final on March 31, 2020, when the Appeals Council
2    denied Plaintiff's request for review of the ALJ's ruling. Id. at 1-6.

3         On May 15, 2020, Plaintiff filed the instant action for judicial review by the federal
4    district court. ECF 1.   On January 19, 2021, Plaintiff filed a Motion for Summary
5    Judgment. ECF No. 18. On March 3, 2021, Defendant filed a Cross-Motion for Summary
6    Judgment. ECF No. 19. On March 16, 2021, Plaintiff filed a Reply. ECF No. 20. Defendant
7    did not file a Reply in Support of the Motion for Summary Judgment. See Docket.

8    ## II.    DISABILITY HEARING

9         On May 30, 2019, Plaintiff appeared with counsel at the hearing before the ALJ. AR
10   45. During the hearing, the ALJ questioned Plaintiff regarding his work experience and
11   alleged disability. Id. at 43-89. Plaintiff testified that he was thirty-three years old and had
12   a high school diploma. Id. at 48, 52-53. He stated that his last gainful employment was as
13   a security guard at RBW SD Incorporated.  Id. at 55. Plaintiff described that he often called
14   out of work for not feeling well and eventually quit in June 2016 because he was "just too
15   sick." Id. at 58. Prior to working as a security guard, the Plaintiff stated he also worked as
16   a street cleaner and as a grounds caretaker. Id. at 58-64.

17        The ALJ next asked Plaintiff a series of questions about his diagnosis of Meniere's
18   disease. Id.  at 66. Plaintiff stated that his doctor, Dr. Erik Virre, told him that his Meniere's
19   disease originated from an ear infection which spread to his inner ear and caused permanent
20   damage. Id. at 66, 87-88. Plaintiff stated that, as a result, he is always dizzy and imbalanced.
21   Id. at 64. Plaintiff alleged that he suffers from constant ear-ringing, tinnitus, and vertigo.
22   Id. at 66. Plaintiff testified:

> [e]verything I do 24/7, it's just vertigo; vertigo, vertigo, dizziness, ears
> ringing. When I'm done here, I'm going to have go lay down. I'll lay down in
> my bed, because I can't sit up. I can't stand up or sit for too long.

Id.

---

28   However, the ALJ still used the November 8, 2014 date as the disability onset date for purposes of her
decision.

3

Plaintiff stated that he takes Venlafaxine, a depression medication. Id. at 67. When the ALJ asked whether the medication helped, Plaintiff responded that the pills help "balance" him out but do not get rid of his constant dizziness, ear-ringing, or headaches. Id.

The ALJ asked Plaintiff questions about his finances and home life. Id. at 48. Plaintiff testified that he is supported by his mother, who receives disability benefits, and that he lives in her house with two sisters and two nieces. Id. Plaintiff stated that he receives "general relief" from the County of San Diego. Id. at 50. Plaintiff testified that he is able to grocery shop, prepare his meals, change his linens when necessary, and do laundry. Id. at 71-72. Plaintiff said he tries to clean the house but cannot clean thoroughly because he becomes dizzy. Id. at 72. Plaintiff testified that he uses a cane to walk, and can only walk "to the front yard." Id. at 68. Plaintiff said he can stand for "[m]aybe less than ten minutes, and then I have to sit down." Id. at 70. Plaintiff testified that he does not have a social life besides interactions with his family and his girlfriend. Id. at 54. When asked about what type of activities he enjoys with his girlfriend, Plaintiff responded:

> We watch TV and movies together. I have to wear glasses when we watch the movie together. And we'll go out to eat. And that's really it. We used to do a lot more, you know, theme parks and go to the beach. We did a lot more of that, but I really can't do any of that no more…

Id. at 72-73.

Plaintiff testified that "the bright light on his phone aggravates [him]" because it "makes [his] vertigo worse." AR 74. Plaintiff stated that he cannot use a "tablet" or play video games anymore because they aggravate his vertigo. Id. Plaintiff stated that he "can barely watch TV." Id. at 75. Plaintiff also stated that he gets migraines roughly once a week. Id. at 77.

The ALJ also questioned the Vocational Expert ("VE"), Ms. Guediri. Id. at 83-87. Based upon the hypothetical identifying Plaintiff's Residual Functional Capacity ("RFC"), the VE opined that Plaintiff could not perform his past work. Id. at 84. However, the VE stated that an individual of Plaintiff's RFC could perform several gainful jobs, including

that of a sorter, assembler, and marker. Id. at 85. The VE's testimony is summarized in more detail in the Discussion section below.

### III.   SUMMARY OF THE ALJ'S DECISION

On June 18, 2019, the ALJ issued a written decision in which she determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 8, 2014 through the date of the ALJ's decision. AR 24-42. The ALJ proceeded to follow the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff engaged in substantial gainful employment from June 2015 to June 2016 after the alleged onset date. AR 29-30. The ALJ confirmed that after June 2016, Plaintiff did not engage in any substantial gainful employment. Id.

At step two, the ALJ found that Plaintiff had the following severe impairments: "a neurological disturbance variously diagnosed to include endolymphatic hydrops vs. migraine vertigo in the setting of mental impairment diagnosed to include somatoform disorder, unspecified anxiety disorder, [and] major depressive disorder due to medical condition." Id. at 30.

At step three, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that met or medically equaled one of the impairments as defined in 20 CFR Part 404. Id. at 31. The ALJ noted that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "were highly inconsistent both internally and in the medical evidence of record." Id. at 35. In her RFC assessment, the ALJ found that Plaintiff had the RFC to perform light work as defined in the Commissioner's regulations, subject to certain non-exertional limitations. Id. at 33. Specifically, the ALJ found:

> [He can] occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch; he can never crawl; he can never work in the presence of unprotected heights or hazardous machinery; he should not be required to operate a motor vehicle as part of the job duties; he should not be in the presence of concentrated

exposure to vibration; he should never work in the presence of concentrated exposure to extreme heat or extreme cold. [He] needs to wear sunglasses while working; he needs to use a cane in his upper right extremity when standing or walking. [He] is limited to performing work with no more than occasional interaction with the public.

<u>Id.</u>

At step four, the ALJ found that Plaintiff, based on his limitation to less than the full range of light work, was unable to perform his past relevant work as a security guard, street cleaner, or a grounds caretaker. <u>Id.</u> at 36. At step five, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile could make a successful adjustment to other work as a "sorter," a "small products assembler," or a "marker." <u>Id.</u> at 37. Accordingly, the ALJ found that Plaintiff was not disabled. <u>Id.</u> at 38.

## IV.   <u>STANDARD OF REVIEW</u>

The Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006). It is evidence that a "reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> In determining whether the ALJ's findings are supported by substantial evidence, the court "must consider the entire record as a whole, and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). When the evidence may be reasonably construed to support more than one rational interpretation, the court must uphold the ALJ's decision. <u>Thomas</u>, 278 F.3d at 954. Further, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014). Additionally, the court may not reverse the ALJ's decision

on account of a harmless error. <u>Molina v. Astrue</u>, 674 F.3d 1104, 111 (9th Cir. 2012). The burden of proving harmless error falls upon the party attacking the agency's determination. <u>Id.</u>

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. <u>Id.</u>

## V.   **DISCUSSION**

Plaintiff challenges the ALJ's unfavorable decision on two grounds. First, Plaintiff contends that the ALJ failed to resolve an apparent conflict between Plaintiff's sunglasses and cane limitations with the VE's finding that Plaintiff can perform work as a sorter, small products assembler, and marker. Pl.'s Mot. at 4-7. Second, Plaintiff contends the ALJ further erred by failing to offer clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. <u>Id.</u> at 8. The Court addresses each ground below.

### A. <u>Relevant Law On Whether the ALJ Failed to   Resolve an Apparent Conflict</u>

At Step Five, the ALJ determines whether the claimant is able to perform any work other than the claimant's past relevant work, considering the claimant's RFC age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v). Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. § 416.920(c)(2).

Social Security Ruling ("SSR") 00-4p governs the use of occupational evidence. At Step Five of the sequential evaluation, ALJs rely on the DOT and testimony from vocational experts in making a disability determination. SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each job. An ALJ is to "rely primarily on the DOT…. for information about the requirements of work in the national economy." <u>Id.</u> An

ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. Id.

The DOT provides specific information about each job, including General Education Development ("GED") and Specific Vocational Preparation ("SVP") scores. The GED score includes a reasoning development level score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance," DOT, Appendix C. The scale of reasoning development levels is 1 to 6, with 6 being the most advanced level. DOT, Appendix C. The SVP score refers to "'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1230, n.4 (9th Cir. 2009) (quoting DOT, Appendix C, p. 1009 (4th ed. 1991) ). "'The DOT lists [an SVP] time for each described occupation. Using the skill level definition in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.'" Bray, 554 F.3d at 1230, n.4 (quoting Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. In Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000)).

"When there is [a conflict or an apparent conflict] between the [VE's] testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (citing Massachi v. Astrue, 486, F.3d 1149, 1153-54 (9th Cir. 2007)); SSR 00-4p, 2000 WL 1898704 at *4 (The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirement of a job] and information provided in the DOT."). The ALJ must first ask the "expert to explain the conflict" and "'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination."

Zavalin, 778 F.3d at 846 (quoting Massachi, 486 F.3d at 1153-54; SSR 00-4p, 2000 WL 1898704 at *2 ("When there is an apparent unresolved conflict between VE … evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE … evidence to support a determination or decision about whether the claimant is disabled.").

The ALJ's duty to inquire is triggered if the conflict between the VE's testimony and the DOT's job description is "obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." Id. "Where the ALJ fails to obtain an explanation for and resolve an apparent conflict—even where the VE did not identify the conflict—the ALJ errs." Thompson v. Colvin, No. ED CV 13-1851-SP, 2015 WL 1476001, at *3 (C.D. Cal. Mar. 31, 2015) (citing cases); see also Massachi, 486 F.3d at 1153-54 (reversible error where the ALJ failed to ask the VE "whether her testimony conflicted with the [DOT], and if so, whether there was a reasonable explanation for the conflict."); Zavalin, 778 F.3d at 847-848 (reversible error where the ALJ "failed to recognize" a conflict between the claimant's limitation to simple, routine tasks and the demands of the Level 3 reasoning jobs); Lamear v. Berryhill,  865 F.3d 1201, 1206 (9th Cir. 2017) (reversible error where the ALJ failed to inquire about the apparent conflict between the claimant's left-hand limitations and the VE's testimony.)

**B. <u>Summary of Parties' Arguments About Whether the ALJ Failed to Resolve an Apparent Conflict</u>**

Plaintiff states that the ALJ assessed Plaintiff's RFC to allow him to "perform a narrow range of work with occasional postural activities, no work around unprotected heights or hazardous machinery, no operation of a motor vehicle, no exposure to vibration or temperature extremes, requiring the need to wear sunglasses while working, using a cane in the right dominant hand for standing or walking, and no more than occasional interaction with the public." Pl.'s Mot. at 4 (citing AR 33). Plaintiff further states that the "sorter" occupation identified by the VE frequently requires "near acuity," which is defined as

"clarity of vision at 20 inches or less." Pl.'s Mot. at 4- 5 (citing Selected Characteristics of Occupations ("SCO"), Appendix C, p. C-4 ¶ 15).  Plaintiff argues that the requirement to wear sunglasses while working preclude him from performing the component of the sorter position that requires frequent "near acuity." Pl.'s Mot. at 5. In support thereof, Plaintiff argues:

> The purpose of sunglasses is to diminish the amount of light entering the lens and hitting the retina. [Plaintiff] has less light striking the retina making visual contrast of detail less. The vocational expert did not explain how a person with less light entering the eye could perform work that required frequent near acuity. [Plaintiff] wears sunglasses to address his vertigo, not photosensitivity. . . . Lights make [Plaintiff] dizzy. . . . The ALJ must propound a complete hypothetical question that is accurate, detailed and supported by the record. The answer given by the vocational expert alerts the record that the need for sunglasses without a description of opacity or impact on near acuity draws out the conflict. The ALJ did not making a finding about near acuity and the impact of sunglasses on near acuity.

Id. (internal citations and quotations omitted). Plaintiff also argues that the sorter position requires light exertion, the small products assembler position requires frequent light exertion, and the marker requires light exertion. Pl.'s Mot. at 6 (citing AR 413-414, 334). Plaintiff states that when the ALJ proposed the hypothetical of a person with a cane, in the right dominant hand, when standing or walking, that the VE still found that the hypothetical person can still perform the three positions because they allowed sitting or standing at a workstation. Id. Plaintiff cites to the three proposed job descriptions from the DOT, and argues that "the proposition that these three occupations would never require standing/walking has an apparent conflict with the DOT." Id. at 6. In sum, Plaintiff argues that the VE's "testimony conflicts with the DOT narrative descriptions of the job duties and with the Commissioner's description of why Labor defines work as light." Id. at 7.

Defendant argues that the ALJ properly relied on the VE's testimony at step five. Def.'s Mot. at 4. In support thereof, Defendant argues that the VE's testimony was "sufficient under the substantial evidence standard." Id. Defendant states that Ninth Circuit standard holds that an ALJ "may take administrative notice of any reliable job information,

including . . . the services of a vocational expert." Id. (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Notwithstanding this, Defendant argues that Plaintiff's arguments on this issue were "administratively waived as Plaintiff, represented by counsel, failed to raise them at the administrative hearing where any such alleged 'conflicts' could have (and in fact were) addressed." Def.'s Mot. at 6.

### C. VE's Testimony In This Case

The VE, Ms. Guediri, identified Plaintiff's past work as a security guard, street cleaner, and grounds caretaker. AR 60, 62-63, 65. The ALJ's questions and Ms. Guediri's responses are set forth in relevant part below:

> Q:    I'd like you to consider a hypothetical individual of the Claimant's same age, which is 33, education, high school diploma, and the three past jobs identified. I'd further like you to assume this individual has the following residual functional capacity: This individual has no exertional limitations. However, this individual has some non-exertional limitations. This individual can occasionally climb ramps and stairs. Never climb ladders, ropes or scaffolds. Occasional balance, stoop, kneel, crouch. Never crawl. Never work in the presence of unprotected heights or hazardous machinery. Should not be required to operate a motor vehicle as part of the job duties. Shouldn't be in the presence of concentrated exposure to vibration. Should never work in the presence of concentrated exposure to extreme heat or extreme cold. This individual would be better with no more than occasional interaction with the public. Based upon that residual functional capacity, could this hypothetical individual perform past work?
>
> A:    No, Your Honor.
>
> Q:    Is there other work this individual could perform?
>
> A:    Yes, one example would be a stock selector. DOT 922.687-058. And that is medium, unskilled, SVP 2. Approximately 275,000 nationwide. Another example would be a linen room attendant. DOT 222.387-030. Medium. Unskilled. SVP 2. Approximately 250,000 nationwide. Additionally, Your Honor, on the light level, an example would be a sorter position. DOT 569.687-022. That is light work, unskilled, SVP 2. Approximately 150,000 nationwide.
>
> Q:    All right. For hypothetical two, I would like to add this individual needs to wear sunglasses when working. If we had the sunglasses, what effect would that have on these jobs?
>
> A:    I don't think that would make any difference, Your Honor, as long as the individual maintained productivity.

Q:    Okay. And then hypothetical three would be hypothetical two with the sunglasses. In addition to that, this individual needs to use a cane when standing and walking in the right dominant upper extremity. What effect would it have on the jobs you've described, and would there be other work?

A:    Okay. So, with those restrictions, it would rule out the stock selector and the linen room attendant. Now, the sorter position can be performed sitting or standing at a workstation. So, that would remain. And other positions would include an assembler for small products. DOT 706.684-022. Light. Unskilled, SVP 2. Approximately, 85,000 nationwide. And that is another job that can be done sitting or standing at a workstation. Another example would be a marker. DOT 209.587-034. That is also light, unskilled. SVP 2. Can also be performed sitting or standing at a workstation, and the numbers nationwide would be approximately 310,000.

AR 83-85. The ALJ also proposed one final hypothetical to the VE about an individual with all the limitations from the previous hypotheticals and if the individual were to be absent from the job four days per month. Id. at 87. The VE testified that "would eliminate full-time, competitive work." Id.

Plaintiff's attorney asked the VE: "And the answers you gave about the absence and off task, those are not based on the DOT, right?" Id. at 88. The VE responded: "Right. As well as the sit/stand, the cane, and the sunglasses, also not addressed by the DOT. My answers there are based on my 20 years of experience in the field as a vocational consultant." Id.

### D. Analysis

#### i. Sorter (DOT 569.687-022)

##### 1. Requirement for Near Acuity

As an initial matter, the Court notes that Defendant does not dispute or otherwise address the requirement for a sorter to utilize frequent "near acuity" as set forth in the DOT. DICOT 569.687-022 (G.P.O.), 1991 WL 683899. Similarly, Defendant does not dispute or otherwise address that the SCO defines near acuity "as clarity of vision at 20 inches or less." SCO, Appendix C, p. C-4, ¶ 15. Instead, Defendant argues the VE's testimony was

"based on [] 20 years' experience as a vocational consultant," which the Defendant claims was sufficient under the substantial evidence standard. Def.'s Mot. at 4 (citing AR 87).

In her testimony, the VE does not explain how she arrived at her conclusion that "it would not make any difference" if a hypothetical individual had to wear sunglasses while performing the occupation of a sorter, which requires frequent near acuity pursuant to the DOT. AR 84. The VE testified that wearing sunglasses would not make a difference "as long as the individual maintained productivity." Id. It is unclear how someone who may not be able to see at near acuity because he is wearing sunglasses would be able to maintain productivity. Here, the ALJ made no attempt to clarify this issue, as she merely accepted the VE's conclusory testimony.

The DOT's description for a sorter states in pertinent part as follows: "Sorts and stacks cork sheets, using for making cork gaskets, according to size. Examines sheets and rejects those with defects, such as cracks or holes. . . . near acuity: Frequently – Exists from 1/3 to 2/3 of the time." DICOT 569.687-022 (G.P.O.), 1991 WL 683899. According to the DOT, a person is required to utilize frequent near acuity" in order to satisfactorily perform the job of a sorter. Id. Yet, the VE testified that this position can still be done wearing sunglasses. AR 85. When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency. Massachi, 486 F.3d at 1153-54. The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. Id.; see also SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the ALJ did not clarify this conflict as she never discussed the specific requirements of the job with the VE, and merely relied on the VE's conclusory assertion that there were no conflicts with the DOT. In her written decision, the ALJ stated simply that "[p]ursuant to SSR 004-p, the undersigned has determined that the vocational expert's

testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 37.

The Court finds that the foregoing inquiry was insufficient to satisfy the ALJ's "affirmative duty to ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) (quoting Zavalin, 778 F.3d at 846).

Additionally, the Court rejects Defendant's argument that the Plaintiff waived his right to challenge the inconsistency between his RFC and the positions the ALJ found he could perform. The ALJ has an "affirmative duty" to fully develop the record. Rounds, 807 F.3d at 1003. This includes eliciting testimony explaining any "apparent conflict" between the vocational expert's testimony and what "the claimant can handle." Zavalin, 778 F.3d at 846; see also SSR 00-4p, 2000 WL 1898704, at *2 (explaining the ALJ's duty to "fully develop the record" as to whether there is consistency between VE occupational evidence and the DOT). The law of this Circuit is clear that counsel's failure to raise the apparent conflict "does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning." Lamear, 865 F.3d at 1206 (citing Zavalin, 778 F.3d at 846). Accordingly, this argument has not been waived.

Finally, the Court finds that the ALJ's failure to recognize the conflict and resolve it was error and one which the Court cannot find to be harmless. Specifically, the Court is unable to determine from the record "whether substantial evidence supports the ALJ's five-step finding that [the claimant] could perform [the] work." Zavalin, 778 F.3d at 848; see also Lamear, 865 F.3d at 1206 (noting the absence of "anything in the record to explain th[e] apparent discrepancy"); Pruett v. Colvin, 85 F. Supp. 3d 1152, 1158 (N.D. Cal. 2015) ("The ALJ's failure to do so may preclude the Court from determining whether the ALJ's decision is supported by substantial evidence.").

/ / /

/ / /

## 2. **Requirement for Light Exertion**

Defendant does not dispute or otherwise address that a sorter position requires light exertion as set forth in the DOT. DICOT 569.687-022 (G.P.O.), 1991 WL 683899. Instead, Defendant's main argument is that the VE's testimony was "based on [] 20 years' experience as a vocational consultant," which the Defendant argues was sufficient under the substantial evidence standard. Def.'s Mot. at 4 (citing AR 87).

In her testimony, the VE does not explain how she arrived at her conclusion that someone who had a cane in the right dominant hand could still perform a job that requires light exertion (some walking), even if they were allowed to sit or stand at a workstation. AR 84. Here, the ALJ made no attempt to clarify this issue, as she merely accepted the VE's conclusory testimony.

The DOT's description for a sorter states in pertinent part as follows:

STRENGTH: Light Work – Exerting up to 20 pounds of force occasionally [1/3 of the time] and/or up to 10 pounds of force frequently [1/3 to 2/3 of the time] and/or a negligible amount of force constantly [2/3 or more of the time] to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DICOT 569.687-022 (G.P.O.), 1991 WL 683899. According to the DOT, a person is required to be able to engage in the requirements of "light work" as defined above, in order to satisfactorily perform the job of a sorter. Id. Yet, the VE testified that this position can still be done with the use of a cane in the dominant hand without explaining how that could be done if the person would have to occasionally walk or stand to adequately perform the job. AR 85. When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is

required to reconcile the inconsistency. <u>Massachi</u>, 486 F.3d at 1153-54. The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. <u>Id.</u>; <u>see</u> <u>also</u> SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the ALJ did not clarify this conflict as she never discussed the specific requirements of the job with the VE, and merely relied on the VE's conclusory assertion that there were no conflicts with the DOT. In her written decision, the ALJ stated simply that "[p]ursuant to SSR 004-p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 37.

The Court finds that the foregoing inquiry was insufficient to satisfy the ALJ's "affirmative duty to ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." <u>Rounds</u>, 807 F.3d at 1003 (quoting <u>Zavalin</u>, 778 F.3d at 846).

Additionally, for the same reasons set forth above, the Court finds that this argument has not been waived and that it is not harmless error.

### ii. <u>Small Products Assembler (DOT 706.684-022)</u>

The same holds true with regard to the job of a small product assembler, which is defined by the DOT as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as members of assembly group assembling one or two specific parts and passing unit to another worker. Load and unloads previously setup machines, such as arbor presses, drill presses, taps, spots-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation

on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

DICOT 706.684-022 (G.P.O.), 1991 WL 679050. The DOT description also provides that the small product assembler position requires "near acuity" "frequently – exists from 1/3 to 2/3 of the time." Id. The "strength" requirement for the small product assembler is the "light work" and is identical to that of a sorter. See supra. Again, there appears to be a conflict between the DOT, which requires near acuity, and the VE's testimony that sunglasses would not affect the ability to perform the job requirements. Similarly, there is a conflict between the DOT, which requires the ability to do light work (and the requirement for some standing and walking), and the VE's testimony that a cane in the dominant hand would not affect the ability to perform the job requirements. For example, it is unclear how a person who needs a cane in their dominant hand can perform the job requirements of a small product assembler such as "passing unit[s] to another worker," or "load and unload previously setup machines," even if it can be done sitting or standing. None of this was clarified by the ALJ, who merely relied on the VE's general conclusion that was based on her 20 years of experience in the field as a VE.

Additionally, for the same reasons set forth above, the Court finds that this argument has not been waived and that it is not harmless error.

### iii.  **Marker (DOT 209.587-034)**

The same holds true with regard to the job of a marker, which is defined by the DOT as follows:

Marks and attached price tickets to articles of merchandise to record price and identifying information. Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entires on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine. . .

DICOT 706.684-022 (G.P.O.), 1991 WL 679050. The DOT description also provides that the marker position also requires "near acuity" "frequently – exists from 1/3 to 2/3 of the time." Id. The "strength" requirement for the marker is "light work" and is identical to that of a sorter and a small product assembler. See supra. Again, there appears to be a conflict between the DOT, which requires near acuity, and the VE's testimony that sunglasses would not affect the ability to perform the job requirements. Similarly, there is a conflict between the DOT, which requires the ability to do light work (and the requirement for some standing and walking), and the VE's testimony that a cane in the dominant hand would not affect the ability to perform the job requirements. It is unclear how a person who needs a cane in their dominant hand can perform the job requirements of a marker such as "marks selling price by hand on boxes containing merchandise" even if it can be done sitting or standing. None of this was clarified by the ALJ, who merely relied on the VE's general conclusion that was based on her 20 years of experience in the field as a VE.

Finally, for the same reasons set forth above, the Court finds that this argument has not been waived and that it is not harmless error.   Accordingly, the Court **RECOMMENDS GRANTING** Plaintiff's Motion and **DENYING** Defendant's Motion on the first issue of whether the ALJ failed to resolve an apparent conflict between Plaintiff's sunglasses and cane limitations with the VE's finding that Plaintiff can perform work as a sorter, small products assembler, and marker.

### E. Subjective Symptoms Testimony

#### i. Relevant Law of Whether the ALJ Appropriately Considered Plaintiff's Subjective Symptoms Testimony

The Ninth Circuit has established a two-part test to determine "whether a claimant's testimony regarding subjective pain or symptoms is credible[.]" See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "need not show that

her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant meets this first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citations omitted). General findings and vague references to the record or testimony as a whole is insufficient; the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." See Reddick v. Chater, 147 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958.

In weighing a claimant's testimony, an ALJ may consider a claimant's (1) reputation for truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3) daily activities; and (3) inadequately explained failure to seek treatment or follow a prescribed court of treatment. Orn, 495 F.3d at 636 (citations omitted). An ALJ may also consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Thomas, 278 F.3d at 959 (citations omitted). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. Id.

### ii. Summary of the Parties' Arguments

Plaintiff argues that although the ALJ found that Plaintiff's complaints were 'highly inconsistent both internally and with the medical evidence of record,' "[t]he ALJ provided no specific examples." Pl.'s Mot. at 10 (citing AR 35). Plaintiff notes that the ALJ relied on Dr. Harris' opinion in support of her finding that "[a]t his August 21, 2018 neurology consult with Jeffrey Paul Harris, M.D., the claimant stated that 'he gets migraines about once every few months.'" (Exhibit 14F). As Plaintiff points out, in the same medical record, Dr. Harris noted that the patient has "left vestibular neuronitis [and] continues to

be incapacitated. . . his dizziness is not associated with his headaches." AR 727. Plaintiff also argues that the ALJ's rejection of the Plaintiff's subjective complaints to Dr. Virre was insufficient. Pl.'s Mot. at 10. The ALJ gave little weight to Dr. Virre's opinion on the basis that "it appears that Dr. Virre's questionnaire responses are little more than a restatement of the claimant's subjective limitations." AR 37. Plaintiff argues that "[a]ccepting the ALJ's criticism of Dr. Virre's opinions as true, then the statements made are the statements of [Plaintiff] requiring a recitation of clear and convincing reasons for rejecting the limitations described." Pl.'s Mot. at 10.

Defendant opposes on the ground that "the ALJ appropriately considered that Plaintiff largely failed to provide evidence demonstrating his alleged disability, that the evidence that did exist contradicted Plaintiff's rather dramatic subjective allegations, and Plaintiff's daily activities were likewise inconsistent with his alleged limitations." Def.'s Mot. at 6 (citing AR 33-35).

### iii.  The ALJ's Treatment of Plaintiff's Testimony

In her written decision, the ALJ found that she "finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 35. Nevertheless, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. Specifically, the ALJ made the following findings:

> At the hearing, the claimant alleged that he had 'vertigo 24/7 all the time' and that 'when I walk I have to use my cane because my balance is so bad.' The claimant alleged, 'Everywhere I go, including the house, I wear sunglasses.' The claimant alleged he had to wear sunglasses when watching television because the TV and bright lights aggravate his vertigo. The claimant also alleged, 'When I bend over down to pick stuff down and I stand up, there's times I see little stars in the air and then my vertigo gets so bad.' The claimant testified that his doctor prescribed him a cane in March 2019, but that he had been using a cane for two years. The claimant reiterated he used the cane every time he was standing or walking, inside and outside the home, even when going to the bathroom.

By way of contrast, the claimant underwent a thorough evaluation for recent complaints of intermittent numbness and tingling in the thumb and palm of the hand on December 6, 2017. It was noted that the claimant 'use[s] a cane but uses left hand to hold onto cane' (Exhibit 9F/4-9). In the course of his December 6, 2017, February 14, 2018, and October 3, 2018 neurological examinations, the claimant demonstrated his ability to tandem walk steps without faltering. As the Dr. Suzan Khoromi, the neurologist, noted, he was 'able to sit up unsupported in a chair and stand and transfer without assistance.' Dr. Khoromi further noted, 'The patient's gait is normal with casual rates of ambulation. Ambulation was performed safely without assistance' (Exhibit 9F/7-8; 14F/17-18, 43-44). The claimant also seemingly presented with no complaints of light sensitivity (Exhibit 9F/4-9; 14F/15-19, 41-45). Similarly, Dr. Friedman noted that [] the claimant walked with cane [sic] but had 'sunglasses in hand' at his July 24, 2018 and February 4, 2019 visits (Exhibit 14F/10). At his March 29, 2019 follow-up neurological visit, Dr. Virre noted the clamant [sic] was tolerant to normal light levels (Exhibit 14F/5).

The claimant later alleged during the hearing that he could no longer play video games on TV, 'because they aggravate my vertigo even more.' The claimant asserted that the last time he played video games was 'over three years ago.' However, at his December 6, 2017 neurological evaluation for his hand numbness, the claimant reported that 'if he plays video games, the problem gets worse.' (Exhibit 14F/5).

The claimant alleged that he could only walk as far as his front yard. He alleged that he could stand 'less than 10 minutes.' He asserted that he could lift and carry 'no more than five pounds.' However, the claimant admitted that he did his own grocery shopping, prepared his own meals, did his own laundry, did some house chores, and made his own bed and change linens as necessary. The claimant disclosed that he watched TV and movies with his girlfriend and went out to eat together. At the hearing, the claimant asserted that he had migraines 'about once a week.' At his August 21, 2018 neurology consult with Jeffrey Paul Harris, M.D., the claimant stated that 'he gets migraines about once every few months.' (Exhibit 14F).   Although, the claimant testified having vertigo 24/7, the claimant typically demonstrated normal gait and station with seemingly no difficulty or need for an assistive device. (Exhibit 12F, 14F).

Id. at 34-35 (some internal citations omitted).

The parties do not challenge the ALJ's step one determination. The ALJ did not claim Plaintiff was malingering and Defendant does not argue that the ALJ made any such finding.  Instead, the Court considers the second part of the Ninth Circuit's two-part test: whether the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. The clear and convincing standard is "not an easy requirement to meet" and is "the most demanding [standard] in Social Security cases." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The Court finds that the ALJ did not articulate clear and convincing reasons to discount Plaintiff's testimony regarding the severity of her symptoms for the reasons set forth below.

### iv.  Plaintiff's Activities of Daily Living

The ALJ noted that Plaintiff's testimony about his ability to participate in daily activities undermined his credibility about his limitations on how far he could walk, stand, lift and carry. AR 34. It is proper for an ALJ to consider the claimant's daily activities in making his credibility determination. See, e.g., Thomas, 278 F.3d at 958-59;  see also 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms). "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Only if a claimant's level of activities is inconsistent with his claimed limitations would activities of daily living have any bearing on the claimant's credibility. Reddick, 157 F.3d at 722.

Here, the ALJ found that Plaintiff "admitted that he did his own grocery shopping, prepared his own meals, did his own laundry, did some house chores, and made his own bed and changed linens as necessary." AR 35. The ALJ found that these activities contradicted Plaintiff's allegations that "he could only walk as far as his front yard," "stand less than 10 minutes" and lift and carry "no more than five pounds." Id. at 34. The Court disagrees. These daily activities are not inconsistent with Plaintiff's allegations, and the physical functions they require are not necessarily transferable to the work setting. Fair, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the

more grueling environment of the workplace, where it may be impossible to periodically rest or take medication."). Further, the ALJ ignored Plaintiff's other testimony showing the difficulties that Plaintiff faced in daily life in connection with these activities including that Plaintiff testified that when he goes in the store, he uses an electric scooter, and that his "sisters give [him] a ride." AR 66, 71. Plaintiff also testified that although he is able to make his bed, "it aggravates his vertigo, but [he] feel[s] more comfortable when [his] bed's made." Id. at 77. He also stated that he can make it in "a little less than five minutes," which is consistent with his limitation that he can stand less than ten minutes. Id. The ALJ also ignored that Plaintiff testified that although he does his own house chores, such as sweeping, he "can't really thoroughly do it" because it is too much for him and he often has to ask his sister to finish up for him. Id. at 72. Similarly, although Plaintiff testified that he watches TV with his girlfriend, he also said that sometimes "[he]'ll just go and watch TV, or [he]'ll go back in [his] room and [he]'ll just lay down, because [he's] just so dizzy." Id. at 75.

An ALJ cannot justify a credibility finding "by ignoring competent evidence in the record that suggests an opposite result." See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). That Plaintiff could participate in some daily activities does not contradict the evidence of otherwise severe problems he encountered during the day. Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (finding legal error when an ALJ discredited plaintiff based on her daily activity when the ALJ ignored other evidence of Plaintiff's daily limitations). Here, Plaintiff's daily activities do not constitute a clear and convincing reason supported by substantial evidence in the record to discredit his report of symptoms.

### v. Objective Evidence in the Record

Although an ALJ may not disregard a claimant's testimony "*solely* because it is not substantiated affirmatively by objective medical evidence" (see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 833 (9th Cir. 2006) (emphasis)), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in his evaluation.

See Lingenfelter, 504 F.3d at 1040; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").  Here, the ALJ referred to some medical evidence in the record to discredit Plaintiff's symptom testimony, but the ALJ largely failed to connect any specific portions of Plaintiff's testimony to the parts of the record supporting her decision. This error prevents the Court from determining whether the ALJ's decision was supported by substantial evidence. Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where ALJ failed to identify what testimony she found not credible and consequently "did not link that testimony to the particular parts of the record supporting her non-credibility determination.").  In other instances, the ALJ misrepresented or inaccurately summarized some of the objective medical evidence in the record as set forth in more detail below.

One of the reasons the Commissioner argues in the Cross-Motion for Summary Judgment that the ALJ appropriately considered Plaintiff's subjective symptom testimony is because she noted that there is no initial function report in the record. Def.'s Mot. at 7 (citing AR 33). The Commissioner is correct that the ALJ noted that "[t]here is no initial function report from the claimant in evidence" and further stated that "[t]he claimant's representative completed the November 2017 and April 2018 appeal reports." AR 33. The ALJ also quoted excerpts from the reports and further noted that "the responses were less than informative and not particularly coherent." Id.    However, contrary to the Commissioner's argument in the Cross-Motion for Summary Judgment, the ALJ did not state that the lack of an initial function report was one of the reasons she found Plaintiff's subjective symptom testimony to not be consistent with the other evidence in the medical record. To the extent the ALJ considered the lack of an initial function report or the information in the November 2017 and April 2018 reports in discrediting Plaintiff's subjective symptom testimony, the Court finds that the ALJ failed to connect any specific portions of Plaintiff's testimony to what parts of the November 2017 and April 2018 reports were inconsistent with that testimony. Brown-Hunter, 806 F.3d at 494 (finding legal error

1   where ALJ failed to identify the testimony she found not credible and consequently "did

2   not link that testimony to the particular parts of the record supporting non-credibility

3   determination."). Additionally, as the Ninth Circuit has held "An ALJ may not disregard

4   [a claimant's] testimony solely because it is not substantiated affirmatively by objective

5   medical evidence." See Trevizo, 871 F.3d at 679 (internal quotation marks and citations

6   omitted).

7        The ALJ also noted that she gave "little weight" to the questionnaire completed by

8   Dr. Eric Virre on April 13, 2018 because "it appears that the Dr. Virre's questionnaire

9   responses are little more than a restatement of the claimant's subjective limitations." AR

10  36 (citing Exhibits 11F 14F); see also AR 666-669, 735. Dr. Virre, one of Plaintiff's

11  treating physicians, identified the following symptoms associated with Plaintiff's

12  Meniere's attacks: vertigo, nausea, malaise, photosensitivity, sensitivity to noise, visual

13  disturbance, mood changes, mental confusion, inability to concentrate, and

14  fatigue/exhaustion. Id. at 667. Dr. Virre also opined that Plaintiff's symptoms are

15  "constant" and "severe enough to interfere with [his] attention and concentration needed

16  to perform even simple work tasks." Id. at 669. The Court finds that the ALJ failed to

17  provide specific, clear, and convincing reasons for disbelieving the entirety of Dr. Virre's

18  report even if it was a restatement of Plaintiff's subjective limitations. Specifically, the ALJ

19  failed to identify which of Plaintiff's subjective symptoms and related limitations identified

20  in the report were not consistent with the  record.

21       The ALJ noted that Plaintiff "alleged that he had to wear sunglasses when watching

22  television, because the TV and bright lights aggravate his vertigo." Id. at 34.

23  Notwithstanding this testimony, the ALJ observed in her opinion that "[t]he claimant also

24  seemingly presented with no complaints of light sensitivity (Exhibit 9F/4-9, 14F/15-19,

25  41-45)." Id. at 34. The Court finds that the ALJ misrepresented the record to support her

26  conclusion. The Court's own review of Exhibit 9F, page four, revealed that at his

27  November 17, 2017 appointment with Dr. Virre, Plaintiff had been "complaining of

28  photophobia" and had "[d]izziness aggravated by head movements, watching television."

AR 659. It is inaccurate and misleading for the ALJ to cite that record in support of her conclusion that Plaintiff did not present with complaints of light sensitivity. Although there are some progress notes in Plaintiff's record that indicate that at some of Plaintiff's appointments, light sensitivity was not discussed or otherwise noted, the ALJ cannot "cherry-pick" certain portions of medical evidence found in the record to support an adverse credibility finding when there is other contradicting evidence in the record suggesting the opposite. See Gallant, 753 F.2d at 1456; see also AR 489, 527, 646, 741, 753 (contradicting evidence in the record).

The ALJ also discredited Plaintiff's testimony about "having vertigo 24/7" because "the claimant typically demonstrated normal gait and station with seemingly no difficulty or need for an assistive device (Exhibit 12F, 14F)." AR 35.   Once again, the ALJ misrepresented the record in support of her conclusion. Upon the Court's review of Exhibit 12F, page four, Dr. Edward Sheldon noted Plaintiff's use of an assistive device in that Plaintiff complained of thumb pain due to "constant gripping of his single point cane that he uses for stability due to chronic vertigo." AR 673.

Additionally, the ALJ found Plaintiff's testimony to be inconsistent with the record because Plaintiff testified at the hearing that the last time he played a video game was "over three years ago" because it aggravated his vertigo. AR 34. The ALJ noted that at Plaintiff's December 6, 2017 neurological evaluation for his hand numbness, the claimant reported that "if he plays video games, the problem gets worse." Id. While the ALJ is correct that Dr. Khoromi's progress note indicates that Plaintiff reported that his hand numbness gets worse if he plays video games, it is not clear from the record whether Plaintiff was in fact playing video games or simply reporting to his doctor the types of activities that aggravated his symptoms. AR 660.  These findings do not necessarily contradict Plaintiff's allegations regarding the severity of the vertigo he experiences and his light and exertional limitations. Trevizo, 871 F.3d at 676. The ALJ also discounted Plaintiff's subjective symptom testimony because she found that his statement that he gets migraine headaches every week

is not supported by the record. See AR 35. While this is a legitimate reason to discredit Plaintiff's testimony, it does not, by itself, constitute a clear and convincing reason.

In sum, the Court does not find the objective medical evidence constitutes a clear and convincing reason to discredit Plaintiff's subjective symptoms. The Court recommends that Plaintiff's symptom testimony, upon remand, be reexamined consistent with this opinion and the required clear and convincing standard. Accordingly, the Court **RECOMMENDS GRANTING** Plaintiff's Motion and **DENYING** Defendant's Motion on this issue.

## VI.   <u>Remand Versus Award for Benefits</u>

The law is well established that the decision whether to remand for further proceedings or simply aware benefits is within the discretion of the Court. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989); <u>see</u> <u>also</u> <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional proceedings could remedy defects in the decision. <u>See</u>, <u>e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984; <u>Lewin</u>, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits for which the disabled plaintiff is entitled, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 710 (9th Cir. 1985).

Here, the Court has concluded that further administrative proceedings would serve a meaningful purpose to address the errors identified herein. Therefore, this Court **RECOMMENDS REVERSING** the ALJ's decision and **REMANDING** for further proceedings to address the errors noted in this Order.

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Cross-Motion for Summary

Judgment be **DENIED**, and that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties on or before **April 29, 2021**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties on or before **May 13, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  April 15, 2021

Honorable Linda Lopez
United States Magistrate Judge